UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RODOLFO GABRIEL HERNANDEZ
(A-Number: 207-816-402),

Petitioner,

v.

WARDEN, GOLDEN STATE ANNEX
DETENTION FACILITY,

Respondent.

Case No.  1:26-cv-3727-DAD-JDP

ORDER; FINDINGS AND
RECOMMENDATIONS

Petitioner Rodolfo Gabriel Hernandez, a citizen of Mexico, entered the United States without permission at an unknown date or time.  He was detained by ICE in April 2026.  Petitioner, proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241.  For the following reasons, I recommend that the petition be granted and that a bond hearing be ordered.

**Background**

As a minor, petitioner entered the United States without permission.  *See* ECF No. 7-1 at 1-2.  In 2003, he began attending public school in Los Angeles.  ECF No. 8.  On March 2, 2016, DHS granted his application for Deferred Action for Childhood Arrivals ("DACA") and authorized employment.  ECF No. 7-1 at 3.  His DACA status expired on an unknown date.  *Id.* at 2.  Petitioner's two children were born in the United States.  ECF No. 8.

Petitioner has been arrested for numerous misdemeanor offenses, some resulting in

1

convictions and jail sentences.  ECF No. 7-2.  On April 21, 2026, ICE arrested petitioner outside his home and has held him in custody since.  ECF No. 7-1 at 2.  ICE issued petitioner a notice to appear that same day.  *Id.* at 4.

### Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### Analysis

Petitioner claims that his detention violates due process.[1]  ECF No. 1 at 16-17. Respondent argues that petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2).  ECF No. 7 at 2-3.  This court has repeatedly held that section 1226, rather than section 1225, is the appropriate section to apply in cases in which a noncitizen is already living in the United States. *See, e.g.*, *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases).  More fundamentally, respondent's argument is misplaced because it only addresses petitioner's due process rights through the lens of its statutory position.[2]  *Id.* at 3.

Courts analyze procedural due process claims in two steps: first, we consider whether

---

[1] Petitioner filed a motion for appointment of counsel.  ECF No. 3.  There currently exists no absolute right to appointment of counsel in habeas proceedings.  *See Nevius v. Sumner*, 105 F.3d 453, 460 (9th Cir. 1996).  Under 18 U.S.C. § 3006A, the court can appoint counsel at any stage of the case "if the interests of justice so require."  *See* Rule 8(c), Fed. R. Governing § 2254 Cases.  I do not find that the interests of justice require appointment of counsel at the present time.  Petitioner's motion to appoint counsel is therefore denied.

[2] Similarly, I deny respondent's request to hold this matter in abeyance pending the Court

2

there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  I consider each in turn.

Petitioner came to the United States as a child; he was granted DACA status when he was approximately nineteen years old.  ECF No. 7-1 at 2-3.  Other district courts have "overwhelmingly found" that a noncitizen with active deferred action status has a protected liberty interest under the Due Process Clause.  *See Benitez-Umanzor v. Jackson Par. Corr. Ctr.*, No. 26-cv-0940, 2026 WL 948795, at *2 (W.D. La. Apr. 8, 2026) (collecting cases); *see also Fugon v. Chestnutt*, No. 1:26-cv-1841-DC-AC, 2026 WL 878616, at *6 (E.D. Cal. Mar. 31, 2026) (finding that the petitioner "demonstrated a likelihood of success on the merits of his claim that his detention without process violated his property interest in the deferred action he is entitled to by his Bona Fide Determination"); *Juarez v. Noem*, No. 2:26-cv-0801-DC-CKD, 2026 WL 799976, at *7 (E.D. Cal. Mar. 23, 2026) (finding that the petitioner "is likely to succeed on the merits of her claim that her removal from the United States violated her due process interest in her DACA status").  However, unlike in the cases above, petitioner's DACA status has expired.  *See* ECF No. 7-1 at 2.  Thus, I must determine whether petitioner's prior DACA status gave him a liberty interest in his continued freedom under the Due Process Clause.

The government established the DACA program in 2012.  *Dept. of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 8 (2020) ("*Regents*").  The program "applies to childhood arrivals who were under age 31 in 2012; have continuously resided here since 2007; are current students, have completed high school, or are honorably discharged veterans; have not been convicted of any serious crimes; and do not threaten national security or public safety." *Id.* at 10.  DACA does not constitute "a passive non-enforcement policy; it create[s] a program for conferring affirmative relief." *Id.* at 18; *see also Juarez*, 2026 WL 799976, at *4.  Deferred action is a "form of prosecutorial discretion whereby the Department of Homeland Security

---

of Appeals' resolution of a similar statutory claim.  *See* ECF No. 6 at 3.

3

declines to pursue the removal of a person unlawfully present in the United States." *Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 967 (9th Cir. 2017); *see also Dept. of State v. Muñoz*, 602 U.S. 899, 924 (Sotomayor, J., dissenting) (explaining that "DACA status entitles [recipients] to work and live in the country without the immediate threat of removal").

Petitioner is currently 29 years old.  ECF No. 7-1.  He applied for DACA in September 2015, when he was approximately 19 years old.  *Id.*  The government accepted his application and, after confirming he qualified, including passing a background check, granted him DACA status on March 2, 2016.  *See* ECF No. 7-1 at 3.  To grant petitioner DACA status, the government necessarily found that he was under 16 years old when he entered the United States, and that he had continuously resided in the United States for at least five years before January 1, 2010.[3]  DHS, *Deferred Action for Childhood Arrivals: Who Can Be Considered?* (Aug. 15, 2012), https://www.dhs.gov/archive/news/2012/08/15/deferred-action-childhood-arrivals-who-can-be-considered.

In adjudicating petitioner's DACA application, the government also necessarily found that petitioner had not been convicted of a felony, a significant misdemeanor, or three or more misdemeanors, or that he was not otherwise a threat to national security or public safety.  *Id.*; *see also Arpaio v. Obama*, 797 F.3d 11, 17-18 (D.C. Cir. 2015) (holding that "DACA . . . appl[ies] to the portion of the population that [DHS] considers not threatening to public safety and that has not had any involvement, or only minimal and minor involvement, with the criminal justice system").

The expiration of petitioner's DACA status does not eliminate his vested protected liberty interest.[4]  I recommend finding that petitioner's past DACA approval, including deferred action

---

[3] The application of these rules means that petitioner was eight years old or younger when he entered the United States.  This is consistent with petitioner's statement that he began attending school in Los Angeles in 2003, when he would have been approximately six years old.  *See* ECF No. 8.

[4] Respondent has provided no indication that petitioner's DACA status was terminated by the government.  Respondent simply states that petitioner's DACA status expired.  ECF No. 7-1 at 2.  Petitioner's DACA status was due to expire on June 11, 2018.  ECF No. 7-1 at 3.  On September 5, 2017, DHS issued a memorandum rescinding DACA and prohibiting DACA recipients with expiration dates more than six months out from renewing their status.  Petitioner's

and employment authorization during which petitioner formed enduring attachments of normal life, gave him a protected liberty interest under the Due Process Clause that persisted beyond the expiration of his DACA status. "Governmental actions may create a liberty interest entitled to the protections of the Due Process Clause." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025). This liberty interest was created at the time that the government granted petitioner DACA status. *See Reyes Servin v. Semaia*, No. 5:26-cv-2745-MAR, 2026 WL 1670852, at *3 (C.D. Cal. June 4, 2026) ("[O]nce Petitioner was granted deferred action, and permitted to remain free from detention, he acquired a liberty interest in remaining released from custody."). Respondent only argues that respondent should be considered an "applicant for admission" and does not argue that the expiration of petitioner's DACA status extinguished his liberty interest. *See* ECF No. 7.

DACA recipients come to the United States as children and "spend years establishing a life in the interior of the United States . . . ." *Gomez Vallecios v. Noem*, No. 25-cv-573-KC, 2025 WL 3853219, at *3 (W.D. Tex. Dec. 9, 2025) (holding that DACA recipient acquired protectable liberty interest). In addition to living in the United States since childhood and attending public school in Los Angeles, petitioner indicates that he has a son and a daughter, both of whom were born in the United States. ECF No. 8. A consideration of all these factors supports a finding that petitioner has a "powerful interest . . . in his continued liberty." *Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) (considering liberty interest "powerful" where petitioner was living with family out of custody for two years).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993

---

DACA expiration date in June 2018, *see* ECF No. 7-1 at 3, was more than six months out from than memorandum. Years later, in *Regents*, 591 U.S. 1, the Supreme Court held that the 2017 recission memorandum was unlawful. *Regents*, 591 U.S. at 12. Given this, I do not find that the expiration of petitioner's DACA status undermines his due process liberty interest.

(9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his freedom. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a private interest in his continued release that developed over the decade between his DACA approval and his detention. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high. Prior to giving petitioner permission to live and work in the United States under DACA, respondent determined that he presented neither a danger to the community nor a risk of flight. Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL

1918679, at *7 (E.D. Cal. July 11, 2025)).  Respondent offers no evidence or argument indicating that any procedural safeguards have been employed following petitioner's re-detention; more generally, it gives the court no reason to believe that any efforts have been made to prevent erroneous deprivation of petitioner's liberty.  *See id*.  On the contrary, the fact that the government maintains that petitioner is subject to mandatory detention indicates that it has not made sufficient efforts to prevent an erroneous deprivation of his liberty.  Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high."  *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted).  "In immigration court, custody hearings are routine and impose a 'minimal' cost."  *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Respondent has not provided any information about the additional burden it would bear as a result of being required to provide a bond hearing.  *See* ECF No. 7.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights.  Given this finding, I must determine the appropriate remedy.  Petitioner seeks immediate release or, alternatively, a bond hearing.  ECF No. 1 at 17.  Respondent requests a bond hearing due to petitioner's "lengthy criminal history" and sets forth petitioner's misdemeanor arrests and convictions.  ECF No. 7 at 2, 4; ECF No. 7-2.  Petitioner has been convicted of multiple misdemeanor driving offenses, including misdemeanor hit and run, driving without a license, driving with a suspended license, two convictions for driving under the influence, and reckless driving.  Further, in 2022, petitioner was convicted of disorderly conduct for soliciting a lewd act.  *Id.* at 8-9.  Finally, in April 2026, petitioner was arrested for indecent exposure.  *Id.* at 14.  ICE took him into custody outside his home after this arrest.  *See* ECF No. 7-1 at 4.  That charge remains pending.  *Id.*

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful

executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id*. at 128 (cleaned up).

It appears that petitioner came to the attention of immigration authorities on April 18, 2026 pursuant to an arrest by local authorities. ECF No. 7-1 at 4. Immigration authorities lodged a detainer for him on April 19, 2026. *Id.* at 4. They then arrested him outside his home on April 21, 2026. *Id.* at 2. Petitioner has been in ICE custody for less than two months. As noted above, petitioner has amassed a significant misdemeanor criminal record, especially in the time after he lost his DACA status in 2018. Immigration authorities have lodged multiple detainers for petitioner with local law enforcement. *Id.* at 4. Under these circumstances, I find that the remedy of a bond hearing is appropriate.

**Conclusion**

Accordingly, it is hereby ORDERED that petitioner's motion for the appointment of counsel, ECF No. 3, is DENIED.

Further, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Petitioner (A-Number: 207-816-402) be provided a bond hearing before a neutral adjudicator within five days of the date of the court's order. Within 24 hours of the filing of the court's order, respondent shall personally serve petitioner with the order and file proof of such service on the docket. At this bond hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that petitioner poses a danger to the community or a risk of

flight, and petitioner shall be allowed to have counsel present.

3. Respondent be ordered to file a status report, within five days of the bond hearing, regarding the outcome.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    June 18, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

9